## GALAMB v. GILMER.

Patent Appeal No. 3225.

Court of Customs and Patent Appeals.

March 5, 1934.

Charles M. Thomas, of Washington, D. C., and I. J. Farley, of Detroit, Mich. (E. L. Davis, of Detroit, Mich., of counsel), for appellant.

Edwin S. Clarkson, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences, awarding priority of invention upon all the counts in issue, seven in number, to appellee.

Appellant's application, No. 327,835, was filed on December 22, 1928. The application of appellee, No. 359,638, was filed on May 1, 1929. Appellee is, therefore, the junior party.

The counts are 1 to 7, inclusive; count 2 is illustrative and reads as follows:

"2. In an automotive vehicle body, an engine hood ledge, a pad, a pad seat formed on said ledge with a groove formed therein, pad fastening means at each end of the seat, tension means intermediate of said fastening means co-operating with said fastening means to hold a pad under tension against displacement on said seat."

Upon the hearing before us, after argument by appellant's counsel, appellee's counsel submitted the case upon the brief theretofore filed by him.

The question of invention with respect to the counts involved rests wholly upon an element described in each of the counts, and set forth in said count 2 as "tension means intermediate of said fastening means co-operating with said fastening means to hold a pad under tension against displacement on said

seat." While count 2 contains an additional element of a groove formed in the pad seat, appellant makes no claim to invention of this element, as a part of the assemblage or otherwise, it being admitted that appellee originally disclosed this element to appellant. Appellee has a patent, No. 1,845,871, covering this element of a groove, and said patent is not involved in this interference. The application upon which this patent was issued was filed on May 1, 1929, the same date as appellee's application herein involved.

There are but two issues involved in this appeal, viz., originality and priority of invention.

Both the Examiner of Interferences and the Board of Appeals held that appellee originated the invention and disclosed it to appellant.

Both parties took testimony. The record is very voluminous, comprising 700 pages, and includes many exhibits introduced in evidence by the respective parties.

Appellant in his preliminary statement alleged that he conceived the invention on or about September 1, 1927; that he embodied his invention in a full-sized machine which was completed and successfully operated on September 5, 1927.

Appellee in his preliminary statement alleged that he conceived the invention on or about the month of January, 1925; that he first embodied the invention in issue in a full size device prior to July 31, 1926; and that it was successfully used in an automobile during July and August, 1926.

It appears from the testimony that appellee was the inventor of a hood lace which he sought to have the Ford Motor Company, of which appellant was chief engineer, use upon the cars produced by it; appellee testified that in furtherance of that object he interviewed appellant in June, 1927, and disclosed to him the invention here in issue, and that he displayed to him a Chevrolet shell embodying said lace and the tension means here involved. This alleged disclosure is denied by appellant. It is conceded by appellant that appellee disclosed to him a means of fastening the lace, as follows:

"Q. 51. How did you have that webbing fastened to the car? A. The way Mr. Gilmer told us to fasten it.

"Q. 52. And how was that? A. By having a groove in the gas tank flange and pulling the center of the wire through the hole and putting a cotter pin to hold the center of the wire down and tighten the extreme ends of the wire in a hole punched into the flange of the gas tank for looping the flat wire around it."

The Board of Appeals held that appellant's testimony, particularly the portions above quoted, disclosed all of the elements of the counts here in issue. The Examiner of Interferences also relied upon said testimony for a like holding.

Appellant contends that both of the Patent Office tribunals erred in holding that the disclosure by appellee, which is admitted by appellant, embraced the elements of the counts here involved. If the Patent Office tribunals are correct upon this point, then the decision of the Board of Appeals should be affirmed without further consideration of other questions presented by appellant, for there is no question that appellee was the first to conceive and demonstrate a fastening device by the use of a cotter pin to hold the lace intermediate the ends thereof in a depression formed on the hood ledge.

We are, however, clearly of the opinion that appellee did not disclose to appellant the use of a cotter pin as a means for applying tension to the lace intermediate the ends, but on the contrary appellee's disclosure to appellant contemplated that tension should be applied to the ends of the lace and that the cotter pin and depression served no such purpose. We think appellee's disclosure with respect to the cotter pin was that such arrangement would serve the same purpose as a rivet fastening the lace to the hood ledge at the same point.

The testimony of appellant's witnesses is uncontradicted that the Ford Company equipped one of its cars with appellee's lace, fastened in the manner disclosed by him to appellant, to wit, by a cotter pin intermediate the ends, but without tension applied at that point, which was tested and found unsuccessful, and that appellee was repeatedly told by employees of the Ford Company that his lace was unsatisfactory because of its tendency to slip off the hood ledge. It is this tendency that the invention here in issue obviates.

Blueprints made by the Ford Company were introduced in evidence showing the cotter pin fastening of the lace, without any indication thereon of a means for applying tension to the lace.

It would seem strange, if appellee disclosed the invention in issue to appellant, that tests should have been made of appellant's lace after said disclosure without the tension means here involved, particularly when the

tension means now disclosed in both applications is so simple and effective to retain the lace upon the hood ledge.

Furthermore, it appears that on July 28, 1927, appellee granted the Ford Company a license to make and use the lace which he invented, and for which he had pending an application for patent, but no mention is made therein of the invention here involved.

It also appears that appellee testified that in the latter part of 1926 or early part of 1927 he showed the Chevrolet shell hereinbefore mentioned, having the tension means here involved, to a Mr. J. F. Wilson, an engineer for the Chevrolet Company. Mr. Wilson was subpœnaed by appellee as a witness in his behalf, but he not only failed to corroborate appellee's testimony, but testified that it was either in the fall of 1927 or spring of 1928 that appellee disclosed to him a tension device in connection with appellee's lace. Appellee testified that he saw the device on a Ford car about the middle or early part of November, 1927. The testimony upon behalf of appellant is that there was shown to appellee in the fall of 1927 a device constructed by employees of the Ford Company, embodying the invention here in question, and that it was borrowed by appellee and kept by him for several weeks. This, however, is denied by appellee.

Appellee further testified that said Chevrolet shell containing the tension device was shown by him to one Nyland, a former employee of the Ford Company, in the spring of 1927. Said Nyland was called as a witness by appellee, but failed to corroborate appellee's testimony that said Chevrolet shell contained a tension device.

Without further discussion of the testimony upon this point, we are constrained to hold that appellee did not disclose the invention here in issue to appellant, but that appellant independently conceived the invention about September 1, 1927, and reduced it to practice on or about September 5, 1927.

Appellee claims to have conceived the invention here involved in the latter part of 1924, and that in 1926 he installed it upon a Buick car owned by one Walter C. Keys, upon which it worked successfully. Appellee testified that he fastened the lace on the hood ledge of this car by securing it at the ends, looping a piece of wire over the reinforcing wire of the lace, passing the first mentioned wire through a hole in the hood ledge, and twisting its ends by means of a cotter pin engaging the wire below the hood ledge, this operation serving to draw the reinforcing wire down and place it under tension.

The Board of Appeals affirmed the holding of the Examiner that appellee's testimony as to conception of the invention and reduction to practice in 1926 was sufficiently corroborated by said Keys and appellee's witness Louis Gorris, and that appellee conceived the invention and reduced it to practice prior to conception of the invention by appellant if the latter was an independent inventor.

It appears that, after appellee's testimony had been taken, the Buick car testified to by appellee and his corroborating witnesses Keys and Gorris was found, and the cowl, groove, hood ledge, and lacing thereupon introduced in evidence by appellant as physical Exhibit J. Said physical exhibit fails to corroborate the testimony of appellee and his witnesses Keys and Gorris. Appellee and said witnesses testified in rebuttal after said Exhibit J was introduced in evidence, and while they identified the exhibit as a part of the Buick car concerning which they had testified, they all stated that said exhibit was not in the same condition as when appellee's lace was placed thereon. Appellee also modified his former testimony in important respects after inspecting said Exhibit J.

There is nothing upon said Exhibit J to indicate that the invention here in issue had ever been applied thereto.

While appellee and the witnesses Keys and Gorris testified that tension was applied to the lace upon said Buick intermediate the ends of the lace, in view of all the facts and circumstances in evidence, we are of the opinion that such testimony should not be considered as establishing reduction to practice by appellee of the invention here in issue.

The witness Keys testified that he did not see the lace being installed upon his Buick car. The testimony of the witness Gorris is somewhat contradictory. There is no documentary or physical evidence corroborating appellee's contention as to priority of invention. His case depends wholly upon oral testimony given nearly four years after the events testified to took place.

Appellee testified that the present invention was embodied in a model of the device constructed not later than April, 1927, which was introduced in evidence as appellee's Exhibit 28. This exhibit shows tension means embodying the invention here involved, but appellee in his testimony admitted that said exhibit is not in the form originally construct-

ed, but was changed in 1928 by the substitution of a different kind of hook as a part of the tensioning means. It was testified that Exhibit 28 was made by one Robert W. Watt and appellee in the shop of one Edward Sloat. Both Watt and Sloat testified for appellee. Watt also testified that said hook as it now appears in Exhibit 28 was not upon said exhibit when it was made by the witness and appellee, but that said Exhibit 28 then did have a similar tensioning means. The witness Sloat testified that Exhibit 28, at the time he testified, was identical with the exhibit as it left his shop, thus contradicting both appellee and the witness Watt.

We think that the close similarity in general appearance between lace fastened without a tensioning means and lace fastened with such tensioning means makes especially applicable the rule that oral testimony given long after the events testified to must be carefully scrutinized. In the case of Deering v. Winona Harvester Works, 155 U. S. 286, 301, 15 S. Ct. 118, 123, 39 L. Ed. 153, the Supreme Court said:

" * * * Granting the witnesses to be of the highest character, and never so conscientious in their desire to tell only the truth, the possibility of their being mistaken as to the exact device used, which, though bearing a general resemblance to the one patented, may differ from it in the very particular which makes it patentable, is such as to render oral testimony peculiarly untrustworthy; particularly so if the testimony be taken after the lapse of years from the time the alleged anticipating device was used. * * * "

In the case of Eibel Process Company v. Minnesota & Ontario Paper Company, 261 U. S. 45, 60, 43 S. Ct. 322, 327, 67 L. Ed. 523, the same court said:

" * * * It is true that some witnesses testify that they realized, before Eibel's application, that speeding up the stock to equal velocity with the wire would solve the difficulty and aid the speed. But there is not a single written record, letter, or specification of prior date to Eibel's application that discloses any such discovery by any one, or the use of the pitch of the wire to aid the speed

of the machine. The oral evidence on this point falls far short of being enough to overcome the presumption of novelty from the granting of the patent. The temptation to remember in such cases and the ease with which honest witnesses can convince themselves after many years of having had a conception at the basis of a valuable patent, are well known in this branch of law, and have properly led to a rule that evidence to prove prior discovery must be clear and satisfactory. * * * "

When we consider the entire case, the simplicity of the invention involved, and its effectiveness to enhance the value of appellee's invention of the lace, we are very strongly of the opinion that, had appellee been in possession of the invention prior to its conception by appellant, he would have disclosed it to the Ford, Chevrolet, and Dodge Companies, with which he had negotiations regarding his lace, to insure the acceptance by these companies of the lace, which was unquestionably his invention. This we find he failed to do at any time prior to appellant's conception and reduction to practice of the invention here involved. He also failed to make any protest to the Ford Company when he saw the invention here in issue upon the cars of said company, knowing that said company had no license from him to use said invention, although they had a license to use the lace invented by him. Not only did he make no protest, but he did not apply for a patent for the invention here in issue until more than 18 months after he had seen the invention in use by the Ford Company.

While no one of these circumstances alone would necessarily be sufficient to negative prior invention by appellee, when all the facts are considered together, we are constrained to hold that appellee has not sustained the burden of establishing by a preponderance of evidence that he is entitled to an award of priority of the invention here involved.

For the reasons stated herein, priority of invention upon all of the counts in issue is awarded to appellant and the decision of the Board of Appeals is reversed.

Reversed.